*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FRAZIER/GOODWIN, Minors.

UNPUBLISHED
June 30, 2022

No. 357856
Wayne Circuit Court
Family Division
LC No. 1998-368808-NA

In re FRAZIER, Minors.

No. 357883[1]
Wayne Circuit Court
Family Division
LC No. 1998-368808-NA

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

In Docket No. 357856, respondent mother appeals by right an order terminating her parental rights to the minor children, AFF, RVF, ZTF, and TAG, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm to children if returned to parent). In Docket No. 357883, respondent father[2]

---

[1] The two appeals were consolidated. *In re Frazier/Goodwin Minors*, unpublished order of the Court of Appeals, entered July 27, 2021 (Docket Nos. 357856 and 357883).

[2] Although respondent father is the legal father of only one of the children, ZTF, and had been treated as the putative father of two of the other children, AFF and RVF, we will refer to him as "respondent father" throughout this opinion because there are no other fathers involved as parties in these appeals. We will use the plural, "respondents," to refer to respondent mother and respondent father collectively.

appeals by right the same order terminating his parental rights to ZTF pursuant to MCL 712A.19b(3)(c)(*i*) and (j).[3] We affirm.

On December 20, 2018, petitioner, the Department of Health and Human Services (petitioner or the DHHS), filed a neglect petition asking the trial court to take jurisdiction of AFF, RVF, ZTF, TAG, and DDAF. Respondent mother was the mother of all five children. The putative father of DDAF was AO. The petition alleged that it was contrary to the welfare of the five children to remain in respondents' care. Respondents were unemployed and had been homeless for two years. Respondents and the five children were living in a minivan. ZTF was hospitalized for three days in late November 2018 for frostbite on her feet. Respondent mother indicated that ZTF suffered frostbite while the family was scrapping for metal. Child Protective Services (CPS) had prior contacts with the family dating back to 1998. In addition to the five children at issue in this case, respondent mother has three older children who are now adults, one of whom had been the subject of a termination petition in 1998 that was ultimately dismissed. The whereabouts of putative fathers AO and MG were unknown, and neither of them had, at that point, provided for the care or supervision of the children. Respondent father had a criminal history that included multiple felony drug convictions and a warrant for failure to pay child support. Because the five children were without proper care and custody, petitioner asked the court to take jurisdiction over the children under MCL 712A.2(b)(1) or (2) and to place the children with petitioner for care and supervision.

On April 4, 2019, respondents entered pleas of admission to the allegations in the petition, and the trial court assumed jurisdiction over the children. On that date, the trial court issued an initial dispositional order requiring respondents to participate in case service plans. Following multiple dispositional review hearings at which it became evident that respondents were failing to comply with and benefit from their case service plans, the DHHS filed a supplemental petition for the termination of respondents' parental rights. A termination hearing was held over several dates. The trial court ultimately entered an order terminating respondent mother's parental rights to TAG, RVF, ZTF, and AFF, terminating respondent father's parental rights to ZTF, and terminating the parental rights of the unknown father(s) of RVF and AFF. These appeals ensued.

In their respective appeals, both respondents argue that the trial court clearly erred in finding by clear and convincing evidence that there existed statutory grounds to terminate their parental rights. Respondent father also asserts that petitioner failed to make reasonable efforts to reunify the family. Additionally, respondents contend that the trial court clearly erred in finding

---

[3] Respondent father's paternity with respect to AFF and RVF was ultimately never established. The trial court terminated the parental rights of the "unknown" father(s) of AFF and RVF pursuant to MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable and has deserted the child for 28 or more days). Also, a request for termination of the parental rights of TAG's legal father, MG, was withdrawn. Further, the trial court denied the supplemental petition to terminate respondent mother's parental rights to DDAF because, at the time of the trial court's termination ruling, DDAF was 18 years old and was a truant from his residential placement. The trial court also dismissed a wardship that had existed for DDAF.

by a preponderance of the evidence that termination of their parental rights was in the children's best interests.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework for appeals challenging the statutory grounds for termination and the best-interests determination:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

Whether the DHHS made reasonable efforts to reunify a family is also reviewed for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

The trial court terminated respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

With respect to MCL 712A.19b(3)(c)(*i*), the statutory ground is established "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks, ellipsis, and citation omitted). Not only must a

respondent cooperate with and participate in services, he or she must also benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

There is no dispute that more than 182 days had elapsed since the issuance of the initial dispositional order. The initial dispositional order was issued on April 4, 2019, and respondents' parental rights were terminated more than two years later. Further, the evidence revealed that the conditions leading to adjudication continued to exist. The trial court assumed jurisdiction over the children on the basis of numerous issues, including substance abuse and failure to provide suitable housing. Before the children became wards of the court, they were living with respondents, who were homeless. While in respondents' care, ZTF experienced frostbite that resulted in her hospitalization for three days. Respondent mother had prior CPS contacts dating back to 1998. Respondent mother admitted to marijuana use, and at least one of her children tested positive for marijuana at birth. Under their case service plans, respondents were required to complete and benefit from supportive visitation, a psychological evaluation, and, if recommended, a psychiatric evaluation, a substance abuse assessment and any recommended services arising from that assessment, and regular attendance at scheduled visits with the children. In addition, respondents were ordered to maintain regular contact with the foster care specialist and to obtain and maintain suitable housing and a legal source of income.

Both respondents failed to maintain meaningful compliance with their case service plans or to benefit from the services offered. They did not obtain and maintain suitable housing, despite the fact that the DHHS offered housing resources to respondents. Respondents' whereabouts were generally unknown while the children were in care. There were indications that respondents were homeless and living in abandoned houses, although respondent mother claimed to be living in a motel room in January 2021. Regardless whether respondents were living in abandoned houses, they never obtained housing suitable for the children. Any legal income paid to respondents was sporadic at best.

Also, after nine referrals, respondents finally competed parenting classes, but they did not substantially benefit from those classes. Their attendance at parenting-time sessions was inconsistent, even after the termination hearing was adjourned for three months in part to give respondents an additional opportunity to demonstrate their commitment to visiting the children. In the period after the January 2021 adjournment of the termination hearing, respondents behaved inappropriately during visits with the children, requiring redirection by the caseworkers. Both respondents had a history of making threats to harm and kill the relative caregivers: respondent mother continued to make such threats against the caregivers throughout the period in which the termination hearing was pending. A caseworker was also threatened. Respondents at times behaved inappropriately during court hearings; in one instance, respondent father interrupted a caseworker's testimony by using profanity, prompting the referee to summon a deputy. Respondent father then left the courtroom, slamming the door as he exited. After multiple referrals, respondents attended individual counseling that contained a substance abuse component, but respondent mother was terminated early from counseling for missing sessions, and respondent father was likewise on the verge of termination from counseling for the same reason. Respondents failed to participate in any weekly random drug screens, and respondent mother, who missed 40 of 40 drug screens, admitted that she still used marijuana.

Overall, we conclude that the trial court did not clearly err by finding that the conditions that led to adjudication continued to exist. Given the amount of time that the children had been in care and respondents' failure to take meaningful advantage of the variety of services offered to them, there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the ages of the children.

Because termination was proper under MCL 712A.19b(3)(c)(*i*), and because only one statutory ground need be proven to terminate a respondent's parental rights, *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013), it is not necessary to address the trial court's determination that a statutory ground for termination also existed under MCL 712A.19b(3)(j). Nonetheless, we will address that additional statutory ground.

Once again, under MCL 712A.19b(3)(j), a trial court may terminate parental rights if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm includes both physical and emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. As discussed, respondents failed to comply with many of the terms and conditions of their case service plans. Most significantly, they did not have a suitable home to which the children could safely be returned. Moreover, respondents failed to complete individual counseling or to benefit from parenting classes, as reflected in respondents' inappropriate behavior during visits with the children. In the past, their failure to properly provide care and oversight resulted in ZTF's getting frostbite. We hold that the trial court did not clearly err by finding that termination was warranted on the basis of MCL 712A.19b(3)(j).

In very cursory fashion, and without citation to relevant authority, respondent father argues that he has a cognitive impairment and that petitioner failed to provide services that took his condition into consideration. Respondent father's argument is unavailing.

The DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "While the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). If the DHHS is aware that a respondent has a disability under the Americans with Disabilities Act, 42 USC 12101 *et seq.*, then the DHHS must reasonably accommodate the disability by making reasonable modifications to the services or programs offered to the disabled respondent. *In re Hicks/Brown*, 500 Mich at 86-87. "When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 354915 and 354916); slip op at 4.

Respondent father argues on appeal that he suffers from a cognitive impairment. In its brief on appeal, petitioner does not dispute that respondent father has an impairment. The DHHS

states that it was aware of respondent father's disability and provided him with extensive and targeted services that included counseling, housing assistance, mental health services, and parenting classes. The DHHS argues that it was respondent father's failure to participate in and benefit from those services that led to the termination of his parental rights. The children's attorney argues that respondent father has abandoned his appellate argument by failing to identify any additional services that were needed. The children's attorney agrees with petitioner that it was not a failure of petitioner to provide services that led to the termination of respondent father's parental rights; rather, it was his failure to participate in and benefit from the services that were offered.

We agree with the arguments of petitioner and the children's attorney. The DHHS offered respondent father multiple services, including housing assistance, parenting classes, psychological and psychiatric evaluations, and individual counseling. After multiple referrals, respondent father finally participated in individual counseling for a few months. The therapist believed that respondent father might have a cognitive impairment, which the therapist was willing to address with various techniques. But respondent father repeatedly failed to attend his counseling sessions and did not complete therapy. He thus did not sufficiently avail himself of the services offered or demonstrate benefit from the services.

Also, respondent father identifies no specific additional services or accommodations that petitioner should have offered. See *In re Sanborn*, ___ Mich App at ___; slip op at 5 ("Without an identification of services to accommodate mother's intellectual disability, we are left to speculate what other services the DHHS *could* have offered."). Respondent father has thus failed to establish that he would have fared better if other services had been offered. See *id*. at 4-6. Respondent father asserts that he should have been given more time to participate in services. But the record reflects that ample time was afforded to respondent father to engage in services. It was respondent father's failure to participate in and benefit from the services that were offered to him that led to the termination of his parental rights.

Next, with respect to respondents' arguments that the trial court clearly erred by finding that termination of their parental rights was in the children's best interests, this Court in *In re Mota*, 334 Mich App at 321, observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

In addition, a trial court may consider a parent's substance abuse problems in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Also, a child's placement with relatives weighs against termination and thus constitutes "a factor to be considered in determining

whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

We conclude that the trial court did not clearly err by determining that termination of respondents' respective parental rights was in the children's best interests. The trial court considered the fact that the children, other than DDAF, were placed with relatives, which the trial court noted weighs against termination. The court also considered the fact that there was no request to terminate MG's parental rights to TAG and that terminating respondent mother's parental rights to TAG would therefore not be for the purpose of adoption of TAG. The trial court noted that RVF, ZTF, and AFF were of an age at which they could be adopted. The court further observed that the children needed permanency and stability. And respondents were not able to provide permanency or stability. They failed to meaningfully comply with their case service plans, and their visitation of the children was sporadic. Respondents did not complete or benefit from individual counseling, and they did not undergo required drug screens. Respondents behaved inappropriately during visits with the children, and they repeatedly threatened to harm or kill the relative caregivers. Moreover, respondents failed to obtain suitable housing for themselves, let alone the children. Additionally, the children had been in foster care for more than two years and were doing well in their placements with relatives.

In short, the trial court considered relevant best-interest factors and specifically discussed the children's placements with relatives. We hold that the court's findings were supported by the evidence and that the court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

-7-